IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA


| | | |
|---|---|---|
| BENJAMIN ANTHONY JOYNER, #126531, | ) | Civil Action No. 3:09-2524-DCN-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| JON OZMINT; | ) | |
| WILLIE L. EAGLETON; | ) | |
| ANNIE SELLERS; AND | ) | |
| DENNIS R. PATTERSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |


Plaintiff, Benjamin Anthony Joyner, filed this action on September 28, 2009.[1] He is an

inmate at the Lee Correctional Institution of the South Carolina Department of Corrections

("SCDC"). Defendants filed a motion for summary judgment on January 22, 2010. Because Plaintiff

is proceeding pro se, he was advised on January 22, 2010, pursuant to Roseboro v. Garrison, 528

F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with

additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed

a response on February 24, 2010.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this
is a dispositive motion, the report and recommendation is entered for review by the court.

**<u>DISCUSSION</u>**

At the time of the alleged incidents, Plaintiff was incarcerated at the Evans Correctional Institution ("ECI") of SCDC. During a routine cell search on February 3, 2009, Correctional Officer Marsico discovered a hole in the wall of Plaintiff's cell. The hole connected Plaintiff's cell with the adjacent cell. Plaintiff and three other inmates (who were the other occupants of the two cells) were charged with possession of a cell phone or other type of communication device and damaging property of value. The incident report of Officer Oates was incorrectly dated January 3, 2009. Officer Marsico's report was correctly dated February 3, 2009. Defendants' Ex. C, Incident Reports of Officer Marsico and Officer Oates. After giving notice of the hearing to Plaintiff, Disciplinary Hearing Officer ("DHO") Annie Sellers ("Sellers") dismissed the charges. <u>See</u> Sellers Aff., Paras 3 and 5, Defendants' Ex. E (Disciplinary Report and Hearing Record).

ECI Warden Willie Eagleton requested a rehearing because the charges were dismissed based on incorrect dates on the incident reports and because of the seriousness of the charges. Defendant Dennis R. Patterson, SCDC Director of Operations, approved and signed the request on March 30, 2009. <u>See</u> Sellers Aff., Para. 6 and Defendants' Ex. F (Memorandum Requesting Rehearing).

Plaintiff was served with a new Disciplinary and Hearing Record on April 3, 2009, stating he was charged with possession of a cell phone device arising from the February 3, 2009 incident. Sellers conducted a hearing on April 9, 2009. Plaintiff was present. Sellers found Plaintiff guilty of the charge and sentenced him to disciplinary detention for 180 days and the loss of canteen, phone,

and visitation privileges for one year. The punishment did not include the loss of good-time credits or the opportunity to earn good-time credits.[2] Defendant's Ex. G; see Sellers Aff., Paras. 7-12.

Plaintiff appears to allege that Defendants violated his constitutional rights as to his disciplinary hearing. Defendants contend that they are entitled to summary judgment because: (1) Defendants did not violate Plaintiff's due process rights; (2) Defendants are entitled to qualified immunity; (3) Officer Sellers is entitled to absolute immunity;[3] (4) no respondeat superior liability may be imputed against Defendants;[4] (5) Defendants are entitled to Eleventh Amendment immunity; and (6) this action should count as a strike against Plaintiff pursuant to 28 U.S.C. § 1915.

## 1.    **Due Process**

Plaintiff appears to allege that he has been denied due process as to his disciplinary hearing because his accuser was not present, he was not given counsel substitute, and Defendants did not present evidence of the cell phone charger or a picture of it. Defendants contend that they did not violate Plaintiff's due process rights because he was not deprived of a life, liberty, or property

---

[2]Plaintiff, who is serving a life sentence for murder, is ineligible to earn good-time credits. See James Bethea Aff., Para. 4; S.C. Code Ann. § 24-13-210(B).

[3]"Absolute immunity flows not from rank or title ... but from the nature and responsibilities of the individual official." Cleavinger v. Saxner, 474 U.S. 193, 201 (1985). For that reason, courts have not decided issues of absolute immunity based solely on whether the defendant was a DHO. See Barry v. Whalen, 796 F.Supp. 885, 894 (E.D.Va.1992) (revised federal disciplinary structure is not sufficiently distinct from BOP structure considered by Supreme Court in Cleavinger to justify finding absolute immunity).

[4]The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

interest as his loss of privileges and disciplinary detention do not warrant protection under the due process clause. They also argue that the conviction complied with due process.

Where a prison disciplinary hearing may result in the loss of good-time credit, <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), holds that due process requires the following:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

<u>Wolff</u>, 418 U.S. at 563-576. Due process in prison discipline decisions is satisfied if there is "some" evidence to show that the inmate committed the offense. <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the board's decision. <u>Id.</u> at 455-56. This standard does not require an examination of the entire record, or a reweighing of the credibility of witnesses and other evidence. <u>Id.</u>; <u>see also</u> <u>Baker v. Lyles</u>, 904 F.2d 925, 932 (4th Cir. 1990).

Plaintiff, who did not lose any good-time credits, fails to show that he was deprived of a life, liberty, or property interest. The due process procedures required by <u>Wolff</u> and its progeny are not

required unless the challenged discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995) (rejecting inmate's claim that either the Constitution or Hawaii statutes required due process for placement in disciplinary segregation).

Plaintiff fails to show a constitutional violation concerning his custody placement. Generally, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the analysis set forth in Sandin, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996) [Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life

5

that would give rise to a liberty interest protected by any procedure."); <u>Reffritt v. Nixon</u>, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), <u>aff'd</u>, 121 F.3d 699 (4th Cir. 1997).

Plaintiff fails to show that he has a protected liberty interest in making phone calls. <u>See</u> <u>U.S. v. Alkire</u>, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr.10, 1996)(no constitutional right to the use of a telephone in prison); <u>Hadley v. Peters</u>, 70 F.3d 117 (7th Cir. 1995)[Table]("The denial of telephone privileges for ten days is not a matter of constitutional dimension."), <u>cert. denied</u>, 517 U.S. 1111 (1996); <u>May v. Baldwin</u>, 895 F. Supp. 1398, 1409 (D.Ore. 1995)(brief suspension of television and telephone privilege does not amount to constitutional violation), <u>aff'd</u>, 109 F.3d 557 (9th Cir. 1997), <u>cert. denied</u>, 522 U.S. 921 (1997). Prisoners do not have an affirmative constitutional right to visitation. <u>White v. Keller</u>, 438 F.Supp. 110, 115 (D.Md.1977) (but leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment), <u>aff'd</u>, 588 F.2d 913 (4th Cir.1978); <u>see</u> <u>also</u> <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 461, (1989) (finding no right to visitation guaranteed by the Due Process Clause). Canteen access is also not a protected liberty interest. <u>See e.g.</u> <u>Madison v. Parker</u>, 104 F.3d 765, 768 (5th Cir.1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding); <u>Bennett v. Cannon</u>, C/A No. 2:05-2634-GR, 2006 WL 2345983, at *2 (D.S.C. Aug.10, 2006) ("[t]here is simply no freestanding constitutional right to canteen privileges at all").

Even if Plaintiff could show that he was deprived of a life, liberty, or property interest, he fails to show that he was denied due process. He does not dispute that he received written notice of the charges at least twenty-four hours prior to his April 9, 2009 hearing. <u>See</u> Defendants' Ex. G. Plaintiff was provided with a written statement by the factfinder (Sellers) as to the evidence relied

on and reasons for the disciplinary action (written report of Officer Marsico and hand written statement of other inmates). Id. Although Plaintiff originally checked that he wanted his accuser present, this is crossed out and initialed by Plaintiff and Sellers. Id. Plaintiff has not shown that he was entitled to counsel substitute, as he has not asserted that he was illiterate and has not shown that the complexity of the issue made it unlikely that he was able to collect and present the evidence necessary for an adequate comprehension of the case. Although Plaintiff disputes the reasons given for the dismissal of the charge at the first disciplinary hearing, he fails to show that Defendant Sellers was impartial at the April 9, 2009 hearing.

Plaintiff also alleges that Defendants failed to follow SCDC policies because they did not timely request rehearing of his disciplinary charge.[5] He fails, however, to show that SCDC policy was violated. Sandra Bowie, Branch Chief for Policy Development for SCDC, provides that SCDC policy does not limit the time to request and grant a rehearing on a disciplinary charge. See Sandra Bowie Aff., Para. 3. She also states that SCDC policy requires that a rehearing occur within twenty-one days after the rehearing is ordered and signed. Id., Para. 4. Here, the rehearing order was signed on March 30, 2009, and the rehearing occurred on April 9, 2009, well within the twenty-one days after the rehearing was ordered and signed. Further, allegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires,

---

[5]To the extent that Plaintiff alleges claims concerning the processing of his grievances, his claims fail. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendant violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994).

a state's failure to abide by that law is not a federal due process issue); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

### 2. **Immunity**

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against

the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Id.</u> at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## <u>CONCLUSION</u>

Based on review of the record, it is recommended that Defendants' motion for summary

judgment (Doc. 13) be **granted**.



_____
Joseph R. McCrorey
United States Magistrate Judge

April 26, 2010
Columbia, South Carolina


**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).