IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Benjamin Anthony Joyner, #126531, | ) |
| | ) C/A No. 3:09-CV-2524-DCN-JRM |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Jon Ozmint, Willie L. Eagleton, | ) **ORDER AND OPINION** |
| Annie Sellers, and Dennis R. Patterson, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter is before the court on United States Magistrate Judge Joseph R. McCrorey's report and recommendation (R&R) that this court grant defendants' motion for summary judgment. The record includes the magistrate judge's R&R made in accordance with 28 U.S.C. § 636(b)(1)(B). Plaintiff has filed written objections. For the reasons set forth below, the court adopts the magistrate judge's R&R and grants defendants' motion for summary judgment. The court also denies plaintiff's motion to appoint counsel and motion to amend complaint, filed on May 25, 2010, and June 2, 2010, respectively.

## I. BACKGROUND

Plaintiff is an inmate currently serving a life sentence at Lee Correctional Institution, South Carolina Department of Corrections (SCDC), as a result of convictions for assault and battery with intent to kill, grand larceny, criminal conspiracy, criminal sexual conduct, kidnapping, and murder. At the time of the alleged incidents, plaintiff was incarcerated at the Evans Correctional Institution (ECI).

1

On February 3, 2009, during a routine cell search, Correctional Officer (C/O) Marisco discovered a hole in the wall of plaintiff's cell. The hole connected plaintiff's cell with the adjacent cell. Plaintiff and inmates Timothy Goldsby, McAlister Rahiman, and Foster Prince, all inmates housed within the two adjacent cells, were charged with possession of a cell phone or other type of communication device and damaging property of value.[1] C/O Marisco's report regarding the incident was correctly dated February 3, 2009; however, C/O Oates, who also participated in the cell search, incorrectly dated his incident report January 3, 2009.

On February 5, 2009, plaintiff received written notice of the charges against him and that a hearing would take place more than twenty-four hours after receipt of the notice. After providing notice of the hearing, Disciplinary Hearing Officer (DHO) Annie Sellers noticed that the dates on the two incident reports did not match; therefore, she dismissed the charges.

Once the mistake regarding the incident report dates was discovered, ECI Warden Willie L. Eagleton requested a rehearing because of the seriousness of the charges and "the occurrence of human error." Mot. for Summ. J. Ex. F. Dennis R. Patterson, SCDC Director of Operations, approved and signed the request on March 30, 2009.

On April 3, 2009, officials at SCDC served plaintiff with a new Disciplinary and Hearing Record, stating that he was charged with possession of a cell phone device stemming from the February 3, 2009 incident. DHO Sellers conducted plaintiff's hearing

---

[1]The device discovered during the search was a cell phone charger. Mot. for Summ. J. Ex. F.

on April 9, 2009. Plaintiff was present at the hearing. DHO Sellers found plaintiff guilty of the charge based on the following evidence: (1) C/O Marisco's incident report; (2) C/O Oates's incident report; (3) written statements by inmates Goldsby, Rahiman, and Garriett; and (4) plaintiff's written statement. DHO Sellers sentenced plaintiff to disciplinary detention for 180 days, and the loss of canteen, visitation, and phone privileges for one year. The punishment did not include the loss of good-time credits. Plaintiff's conviction for murder, along with his life sentence, make him ineligible to earn good-time credits, a fact not disputed by plaintiff. DHO Sellers documented her findings, decision, and the evidence on the Disciplinary Report and Hearing form.

Plaintiff filed an SCDC grievance, complaining that the disciplinary process above failed to comply with SCDC policy, and he sought dismissal of his conviction. Officials denied both his Step One and Step Two grievances, and plaintiff appealed the Step Two denial to the Administrative Law Court. On September 2, 2009, Administrative Law Judge John D. McLeod summarily dismissed the appeal because plaintiff's claim did not implicate a state-created liberty interest.

Plaintiff then filed suit in federal court, claiming that defendants violated his Fourteenth Amendment due process rights throughout the disciplinary hearing process and seeking a total of $1.8 million dollars in damages. On January 22, 2010, defendants filed a motion for summary judgment on the following grounds: "(1) the Defendants did not violate Inmate Joyner's due process rights, (2) the Defendants are entitled to immunity from this action, (3) claims based on respondeat superior liability must be dismissed, and (4) the doctrine of sovereign immunity precludes the action." Mem. in

Supp. 3. Defendants also request that this court issue a strike against plaintiff pursuant to 28 U.S.C. § 1915.

On February 24, 2010, plaintiff filed a response in opposition to defendants' motion, and on April 26, 2010, United States Magistrate Judge McCrorey filed an R&R, recommending that this court grant defendants' motion for summary judgment. Judge McCrorey found that plaintiff failed to show that he was deprived of a life, liberty, or property interest, and thus, defendants did not violate plaintiff's due process rights. Judge McCrorey found that defendants are entitled to Eleventh Amendment immunity in their official capacities, and qualified immunity in their individual capacities. On May 12, 2010, plaintiff filed a lengthy series of objections to the R&R, many of which repeat the arguments set forth in his response to defendants' motion for summary judgment.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which a specific, written objection is made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140 (1985). This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. Howard v. Secretary of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v.

4

Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636 (b)(1).

### III.  PRO SE PETITIONS

Plaintiff is proceeding pro se in this case. Pro se complaints should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970 (1978). A federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Social Services, 901 F.2d 387, 390-91 (4th Cir. 1990).

### IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." Id. at 322. The nonmovant "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor. Anderson, 477 U.S. at 255. However, a mere "scintilla" of evidence will not preclude summary judgment. Id. at 252.

## V. DISCUSSION

Plaintiff raises a number of objections claiming that defendants violated his Fourteenth Amendment due process rights. Many of the objections were previously raised in plaintiff's response to defendants' motion for summary judgment. Plaintiff also objects to the magistrate judge's recommendation that defendants are entitled to both sovereign and qualified immunity.

**A. Due Process**

"In order to prevail on either a procedural or substantive due process claim, Inmates must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action." Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). Furthermore, an inmate's liberty interests are limited to discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Wolff v. McDonnell, the Supreme Court held that when a prison disciplinary hearing may result in the loss of good-time credit, and thus impacts a liberty interest, due process requires the following: (1) giving the prisoner written notice of the charges at least twenty-four hours before he appears for the disciplinary hearing; (2) providing the prisoner with a written statement by the factfinders regarding the evidence relied on and the reasons for the disciplinary action; (3) allowing the prisoner "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (4) allowing the prisoner to seek the aid of another inmate, or if that is forbidden, a staff member, or a competent inmate designated by the staff, to serve as substitute counsel if the prisoner is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case"; and (5) providing impartial factfinders. 418 U.S. 539, 563-76 (1974).

Due process in prison discipline decisions requires only "some" evidence to show that the prisoner committed the offense. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). This standard is satisfied if "there is *any* evidence in the record that could support the conclusion reached by the disciplinary board," and it "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455-56 (emphasis added).

Plaintiff argues that his due process rights were violated because Wolff grants prisoners a liberty interest in disciplinary procedures, he has a liberty interest in administrative segregation, defendants failed to follow SCDC policy and South Carolina

law during the disciplinary process,[2] he was entitled to counsel substitute, defendant DHO Sellers was not an impartial factfinder, and defendants framed him for challenging the constitutionality of the hearing record.

All of plaintiff's due process claims fail because he cannot demonstrate that he was deprived of a life, liberty, or property interest. Plaintiff does not have a liberty interest in SCDC's disciplinary procedures. As clearly stated above, a liberty interest in the present context only arises when the discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Plaintiff's discipline included 180 days of disciplinary detention, or segregated confinement, and loss of canteen, visitation, and phone privileges for one year. In Sandin, the Supreme Court held that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. And while plaintiff did not challenge his loss of canteen, visitation, and phone privileges, courts have held that these forms of discipline do not implicate the Due Process Clause of the Fourteenth Amendment. United States v. Alkire, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr. 10, 1996) (finding no constitutional right to the use of a phone while in prison); Madison v. Parker,

---

[2]Plaintiff claims the following violations of SCDC policy and South Carolina law: (1) despite dismissal of the February 3, 2009 charge, SCDC policy allegedly precludes a rehearing unless the charge was reversed, approved, or modified by the warden; (2) there was no tape recording of the disciplinary hearing as required by SCDC policy; (3) his accuser was not present at the disciplinary hearing, even though defendant allegedly made the appropriate request on the requisite form; and (4) in the absence of an agency rule regarding time limits for submitting rehearing petitions, under South Carolina law, McCummings v. South Carolina Department of Corrections, 462 S.E.2d 271 (S.C. 1995), defendants were limited to a thirty-day time period, which they exceeded by two days.

104 F.3d 765, 768 (5th Cir. 1997) (holding that an inmate's commissary restrictions "do not implicate due process concerns"); White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977) (holding "that there is no constitutional right to prison visitation"). Without a valid life, liberty, or property interest, plaintiff is unable to trigger the due process analysis enunciated in Wolff. Moreover, there is no dispute that plaintiff, as a result of his murder conviction and life sentence, is unable to earn good-time credits, nor was he in the position of losing good-time credits. This also militates against the application of Wolff.

Plaintiff's claim that defendants allegedly failed to comply with SCDC policy is without merit. Even if defendants failed to follow SCDC policy, which this court doubts upon review of the briefs and exhibits,[3] such a failure would not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741, 751-52 (1979) (finding that the violation of agency regulations did not raise any constitutional questions); Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that "[a]lleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution"); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (holding that section 1983 guarantees an

---

[3]For example, Sandra Bowie, Branch Chief for Policy Development, SCDC, submitted an affidavit stating that "SCDC Policy number OP-22.14, § 24 does not impose a time limit on a request for a rehearing." Mot. for Summ. J. Ex. J. She states that "[a] rehearing must occur within 21 days from the date that the rehearing is ordered and signed by the division of operations." Mot. for Summ. J. Ex. J. In this case, the rehearing order was signed on March 30, 2009, and defendant's disciplinary hearing was held on April 9, 2009, which was clearly within the twenty-one day time limit.

inmate's constitutional rights against violation by state actors, not against violation of prison rules by prison officials). As a result of plaintiff's failure to demonstrate that he was deprived of a life, liberty, or property interest, it is unnecessary for the court to address his remaining objections regarding whether he was entitled to substitute counsel and whether DHO Sellers was an impartial factfinder, along with any related objections and arguments.[4]

**B. Immunity**

In Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989), the Supreme Court held that,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

(Internal citation omitted). Eleventh Amendment immunity "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." Id. at 70 (citation omitted). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." Id. at 71 (internal citations omitted).

---

[4]The magistrate judge found that "[e]ven if Plaintiff could show that he was deprived of a life, liberty, or property interest, he fails to show that he was denied due process." R&R at 6. Even though this determination is unnecessary to reach a disposition in the motion before the court, the undersigned agrees with the magistrate judge's analysis of plaintiff's claims, as measured by Wolff, as well as the magistrate judge's conclusion.

10

Plaintiff argues that he is not taking action against the State of South Carolina; however, in his objection, he admits that he is suing defendants in their official capacities. His federal complaint seeks a total of $1.8 million in damages from these individuals. In the appendix to his objections, plaintiff acknowledges that defendants are immune under the Eleventh Amendment for causes of action seeking monetary damages. Accordingly, defendants are immune from plaintiff's claims in their official capacities.[5]

Defendants also contend that they are entitled to qualified immunity in their individual capacities. In Harlow v. Fitzgerald, the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818 (1982) (citations omitted).

> "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992) (citations omitted). Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." [Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)]. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. [Tarantino v. Baker, 825 F.2d 772, 774-75 (4th Cir. 1987)].

Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994). As discussed above, plaintiff failed to

---

[5]In the appendix to plaintiff's objections, he states that he can seek an injunction against defendants, which would fall outside of Eleventh Amendment immunity. He is correct on this point of law, which is also discussed in Will, 491 U.S. at 71 n.10, yet he never sought injunctive relief in his complaint. In fact, a very liberal reading of his complaint leads to only two desired outcomes: subjecting defendants to some form of discipline, and payment of monetary damages in the amount of $1.8 million.

show that defendants violated any of his clearly established constitutional rights, and the magistrate judge correctly found that defendants are entitled to qualified immunity in their individual capacities.

### VI.  MOTION TO APPOINT COUNSEL

After filing his objections to the report and recommendation, plaintiff filed a motion to appoint counsel on May 25, 2010.  The constitutional right to court-appointed counsel for indigent defendants recognized in Gideon v. Wainwright, 372 U.S. 335 (1963), does not extend to pro se litigants taking action in civil court for alleged injustices.  While the court has discretionary authority to "request an attorney to represent any person unable to afford counsel" under 28 U.S.C. § 1915(e)(1), "it is well settled that in civil actions the appointment of counsel should be allowed only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975) (internal citation omitted).  Whether exceptional circumstances exist depends on "the type and complexity of the case, and the abilities of the individuals bringing it."  Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984) (quoting Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982)).  Plaintiff's case does not involve complex issues, and plaintiff has demonstrated that he is able to pursue his claims.  Therefore, plaintiff's motion for appointment of counsel is denied.

### VII.  MOTION TO AMEND COMPLAINT

On June 2, 2010, plaintiff filed a motion to amend his complaint.  Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court has declared that "this mandate is to be heeded."  Foman v. Davis, 371 U.S. 178, 182 (1962).  As the United

States Court of Appeals for the Fourth Circuit has explained, "[t]his liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). The law is well settled "that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Delay alone is an insufficient reason to deny leave to amend—the delay must be accompanied by prejudice, bad faith, or futility. Id. at 509-10.

Plaintiff wishes to amend his complaint to sue defendants in their individual capacities for monetary damages, rather than in their official capacities. As determined above, defendants are entitled to qualified immunity in their individual capacities. Accordingly, the proposed amendment to plaintiff's complaint would be futile, and plaintiff's motion to amend his complaint is denied.

## VIII. CONCLUSION

For the foregoing reasons, the court **ADOPTS** and **AFFIRMS** the magistrate judge's R&R and **GRANTS** defendants' motion for summary judgment.[6] The court also

---

[6] In addition to the objections raised by plaintiff above, he raised several other issues which this court will not entertain because they have no basis in the magistrate judge's R&R. First, plaintiff wishes to challenge the March 12, 2010 order denying his motion for discovery. Second, he asks the court to determine whether the SCDC computer system reflects that "the plaintiff's privileges have not been reinstated." Pl.'s Objections 39. Third, plaintiff claims that Judge McCrorey is biased against him because Judge McCrorey denied his motion for counsel on April 16, 2010.

13

**DENIES** plaintiff's motion to appoint counsel and motion to amend complaint.

    **AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**September 22, 2010
Charleston, South Carolina**